IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DEBRA BURCH** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-878-STE |
| | ) |
| **MARTIN O'MALLEY,** | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 22-32). On review, the Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Plaintiff appealed, and following an unopposed motion to remand, the Western District of Oklahoma reversed and remanded the action and the Appeals Council ordered a second hearing. *See* TR. 863-873. A second administrative hearing was held and the ALJ issued a second unfavorable decision. *See* TR. 782-799. On review, the Appeals Council denied Plaintiff's request for review,[1] making the second decision of the ALJ the final decision of the Commissioner for purposes of the instant appeal.

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between her alleged onset date of May 1, 2014 and December 31, 2019, her date last insured. (TR. 784). At step two, the ALJ determined Ms. Burch suffered from the following severe impairments: generalized anxiety disorder; major depressive disorder; and posttraumatic stress disorder. (TR. 784). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 785).

At step four, the ALJ concluded that Ms. Burch retained the residual functional capacity (RFC) to:

---

[1]  (TR. 772-775).

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could understand, remember, and carry out simple and detailed instructions, but not complex instructions. She could never interact with the general public, but could occasionally interact with coworkers and supervisors.

(TR. 788).

At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. (TR. 798). However, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 824-825). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 825). At step five, the ALJ adopted the VE's testimony and concluded that Ms. Burch was not disabled based on her ability to perform the identified jobs. (TR. 799).

### III.   ISSUES PRESENTED

On appeal, Ms. Burch alleges the ALJ erred in: (1) his evaluation of the findings from State Agency medical consultants, (2) failing to consider Plaintiff's ability to adapt to work, and (3) his evaluation of the VE's testimony, (2) (ECF No. 11:6-11).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t]

3

evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. NO REVERSIBLE ERROR IN THE ALJ'S EVALUATION OF PRIOR ADMINISTRATIVE FINDINGS

Ms. Burch alleges two errors in the ALJ's evaluation of prior administrative findings.[2] (ECF No. 11:7-9). The Court agrees with Ms. Burch regarding one point of error, but concludes that the error was harmless.

### A. The ALJ's Duty to Evaluate Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In doing so, 20 C.F.R. § 404.1520c provides that the ALJ must articulate how persuasive he finds the

---

[2] Prior administrative medical findings are findings, other than the ultimate determination about whether an individual is disabled, about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review, based on a review of the evidence in the claimant's case record, including, but not limited to, an individual's RFC. 20 C.F.R. § 404.1513(a)(5).

medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 404.1520c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(1).

In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### B.   Prior Administrative Medical Findings and the ALJ's Related Evaluation

At the initial and reconsideration levels of the disability determination, State agency psychologists Dr. Ryan Jones and Dr. Gary Lindsay evaluated Plaintiff's mental residual functional capacity (MRFC) and rendered "prior administrative medical findings." (TR. 74-80, 88-94, 104-110). The assessments provided by Dr. Jones, who evaluated Plaintiff's mental abilities at the initial level are found in Exhibits 1A & 3A, dated October

2019, and the assessment from Dr. Lindsay is found in Exhibit 6A, dated December 2019. (TR. 74-80, 88-94, 104-110). Each assessment, in turn, is comprised of: (1) an evaluation of Plaintiff's medically determinable impairments and severity, utilizing the technique as set forth in 20 C.F.R. §404.1520a, otherwise known as "PRT findings" which are used at steps two and three of the disability assessment (2) Plaintiff's mental residual functional capacity (MRFC) which is used at step four of the disability determination. The MRFC, in turn, is comprised of two sections. In "Section I" the author is instructed to answer a series of questions to "help determine the individual's ability to perform sustained work activities." (TR. 76, 91, 108). Under this section, the author rates the severity of an individual's limitations, if any, in four specific domains. See TR. 77-78, 91-92, 108-109. "However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (TR. 76, 91, 108). Thus, while the questions in Section I are designed to aid a doctor's assessment, it is the narrative discussion ("Section III") that represents the Plaintiff's MRFC. See Smith v. Colvin, 821 F.3d 1264, 1268 n.1 (10th Cir. 2016).

### 1. Psychologists' Assessment of Plaintiff's Medically Determinable Impairments and Severity—PRT Findings

Dr. Jones assessed Plaintiff's medically determinable impairments and found that Ms. Burch had "moderate" limitations in each of the four functional areas as set forth in 20 C.F.R. § 404.1520a. Those areas are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. See TR. 74, 88. Dr. Lindsay, on the other hand, found that Ms. Burch

had: (1) "moderate" limitations in the areas of interact with others and concentrate, persist, or maintain pace; and (2) had "mild" limitations in the areas of understand, remember, or apply information and adapt or manage oneself. (TR. 105).

### 2. Psychologists' Assessment of Plaintiff's MRFC

As stated, the MRFC portion of the psychologists' assessments have two subparts. In Section One of the MRFC, at the initial level, Dr. Jones found that Plaintiff was:

- moderately limited in her abilities to understand, remember, and carry out detailed instructions and respond appropriately to changes in the work setting; and

- markedly limited in her ability to interact appropriately with the general public.

(TR. 77, 78, 91, 92).

Additionally, in Section One, Dr. Lindsay found that Ms. Burch was:

- moderately limited in her abilities to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

- markedly limited in her ability to interact appropriately with the general public.

(TR. 108-109).

In Section Three—the "narrative" portion of the MRFC—Dr. Jones stated that Ms. Burch could:

- understand, recall, and perform simple and detailed tasks and make related judgments;

- interact with coworkers and supervisors on a superficial work basis to learn tasks and accept criticism but would not work well in a densely populated setting; and would work best in a setting with infrequent contract and longer periods of solitary work;

- not interact with or relate to the general public; and

- adjust to a work situation and some changes in a usually stable work situation.

(TR. 78, 92).

In his "narrative" portion of the RFC, Dr. Lindsay states that Ms. Burch:

- could understand, retain, and perform simple and some detailed tasks on a sustained basis;

- has difficulty with interpersonal relations and would perform better in jobs with limited requirements to interact with co-workers;

- would not interact well with the public;

- can work with normal supervision and in a setting where she would work mostly alone; and

- can adjust to mental demands of the work place and carry out instructions.

(TR. 110).

### 3. The ALJ's Evaluation of the Prior Administrative Findings

The ALJ acknowledged the findings from Drs. Jones and Ryan and stated:

Finally, the State Agency medical consultants at the initial level opined that the claimant is able to understand, recall, and perform simple and detailed tasks and make related judgments (Exhibits 1A and 3A). They opined that she is able to interact with coworkers and supervisors to learn tasks and accept criticism, but would not work well in densely populated settings and cannot relate to the general public (Exhibits 1A and 3A). They further opined that she can adjust to a work situation and some changes in a usually stable work situation (Exhibits 1A and 3A). At the reconsideration level, the State Agency medical consultants opined that the claimant can understand,

retain, and perform simple and some detailed tasks on a sustained basis, but has difficulty with interpersonal relations due to anxiety and would perform better in jobs with limited requirements to interact with coworkers (Exhibit 6A). They opined that she would not interact well with the public, but can work with normal supervision and in a setting where she can work mostly alone (Exhibit 6A). They further opined that she can adjust to mental demands of the workplace and carry out instructions (Exhibit 6A). The undersigned has found the State Agency medical consultants' opinions at both levels persuasive as they were supported by the medical records available at the time each opinion was rendered (see Exhibits 1F, 2F, and 6F). Further, they are consistent with later evidence received at the hearing level, including additional primary care records and the October 2019 psychological evaluation (see Exhibits 7F-9F).

(TR. 797).

### C. No Error in the ALJ's Evaluation of the Findings from Drs. Jones and Lindsay

Ms. Burch presents two challenges to the ALJ's evaluation of the findings from Drs. Jones and Lindsay. First, Plaintiff argues that the ALJ "overlooked that the mental reviewers' opinion at both levels found each of the four broad domains of Claimant's function to be moderately impaired" . . . and "and he did not say why he rejected them." (ECF No. 11:8). But Plaintiff has misunderstood the application of the PRT findings, which are not RFC findings, but are, instead, used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *See* SSR 96–8p, 1996 WL 374184, at \*4 (July 2, 1996). The PRT findings do not constitute commentary or opinions about the ability to perform basic mental work-related activities. As a result, the PRT findings do not have to undergo the explanation and analysis Plaintiff suggests. Rather, the ALJ is required to include specific findings as to the degree of limitation in each of the PRT categories. 20 C.F.R. § 404.1520a(e)(4). The ALJ fully complied with this requirement

when he explained the factual basis for his PRT findings in the decision. *See* TR. 785-787. Plaintiff has not argued that the ALJ's PRT conclusions lack evidentiary support or are otherwise inaccurate. Thus, the Court rejects this challenge. *See Wheat v. Colvin*, No. 14-CV-611-JED-FHM2015 WL 13741704, at *3 (N.D. Okla. Dec. 16, 2015) (rejecting plaintiff's challenge to PRT findings because the ALJ complied with 20 C.F.R. § 404.1520a(e)(4), which is all he was required to do).

Second, Plaintiff takes issue with the fact that Dr. Lindsay found different limitations in Section One of the MRFC than Dr. Jones found and the ALJ ignored the differences and that the limitations "must be accounted for in [the] ALJ's RFC." (ECF No. 11:9). The Court finds no reversible error.

The Court begins by noting that although "adjudicators are to use the Section III narrative as the RFC assessment," . . . this does not mean that an ALJ can turn a blind eye to moderate Section I limitations." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) "If a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.*

Plaintiff takes issue with four "Section I" findings from Dr. Lindsay that she believes the ALJ improperly ignored. According to Ms. Burch, the ALJ ignored Dr. Lindsay's findings that Plaintiff was moderately limited in her abilities to:

- understand, remember, and carry out detailed instructions;

- maintain attention and concentration for extended periods;

- work in coordination with or proximity to others without being distracted by them; and

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(ECF No. 11:8-9). The undersigned disagrees. In the RFC, the ALJ found that Plaintiff could:

- understand, remember, and carry out simple and detailed instructions and

- occasionally interact with coworkers and supervisors.

(TR. 788). The Court finds that the RFC, as written, properly accounts for all of the moderate limitations found by Dr. Lindsay with the exception of her moderate limitation in her ability to maintain attention and concentration for extended periods.

However, the Tenth Circuit Court of Appeals has held that in certain cases, an ALJ's finding that a claimant is limited to unskilled work, properly accounts for moderate limitations in a claimant's ability to concentrate, persist, or maintain pace. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). Here, the ALJ limited Ms. Burch to unskilled work at SVP 2. *See* TR. 799; SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4. 2000) ("unskilled work corresponds to an SVP of 1–2"). Because "the capacity to perform unskilled work includes ability to maintain attention for extended periods of two-hour segments [and] concentration is not critical," the Court concludes that any error in failing to include this particular moderate limitation in the RFC is harmless. *See Vigil*, 805 F. 3d

at 1204 (citing Social Security Administration Program Operations Manual System § DI 25020.010, § B(3)).

In sum, the Court finds no reversible error in the ALJ's evaluation of the findings from Drs. Jones and Lindsay.

## VI. ERROR IN THE RFC

Next, Plaintiff contends that the ALJ "failed to determine Claimant's ability to adapt in his RFC." (ECF No. 11:9). In support of this argument, Plaintiff cites: (1) findings from Drs. Jones in Section I of the MRFC that Plaintiff suffered from moderate limitations in her ability to "respond appropriately to changes in the work setting" and (2) findings from Plaintiff's psychologist, Dr. Deann Gattis, that Plaintiff had "marked" limitations in this same area. (ECF No. 11:9). After citing this evidence, the entirety of Ms. Burch's substantive argument is that that "the ability to adapt to a work environment is critical when performing unskilled work" and "[t]his ALJ failed to follow the required legal standards and properly evaluate all of the evidence." Although Plaintiff presents a woefully undeveloped argument, the Court agrees with Ms. Burch and concludes that the when formulating the RFC, the ALJ failed to account for limitations in Plaintiff's ability to adapt and failed to explain why.

In *Parker v. Commissioner, SSA*, 772 F. App'x 613, 615 (10th Cir. 2019), the Tenth Circuit Court of Appeals was presented with a similar challenge. In *Parker*, a State Agency physician opined that the claimant was moderately impaired in his ability to respond appropriately to changes in the usual work setting. *Parker*, 772 F. App'x at 616. Even so,

the ALJ failed to account for this limitation in the RFC. *Id.* The Court began by noting the mandate that requires the ALJ to explain any particular limitations opined by a physician, that were omitted in the RFC. *See id.* at 615 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). Although the Court acknowledged that sometimes, the agency can account for mental limitations by limiting a claimant to unskilled work, the agency must "ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion" "unless the connection (between the limitation and the work) is obvious." *Id.* In *Parker*, the Court found that the connection was "not obvious" because "the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) ... to respond appropriately to ... usual work situations; and to deal with changes in a routine work setting." *Id.* (citing SSR 85-15, 1985 WL 56857, at *4 (1985)). As a result, the Court reversed based on the ALJ's failure to explain the omission of the adaption limitations in the RFC. *Id.*

The Court finds *Parker* persuasive. Here, the Court is presented with two physicians' opinions that Plaintiff suffered from "moderate" and "extreme" limitations in her ability to adapt to changes in the workplace.[3] The ALJ rejected Dr. Gattis' opinions as not supported by her own treatment notes and inconsistent with the overall evidence of the record, TR. 797, and the Court finds that his explanation was supported by substantial

---

[3] Commissioner O'Malley incorrectly argues that Plaintiff's position concerns the ALJ's "paragraph B" findings which are used at steps two and three of the disability determination. *See* ECF No. 17:12-13. Ms. Burch has clearly relied on the "Section I" findings from Dr. Jones and an opinion from her psychologist, Dr. Gattis, both of which must be considered and not ignored without explanation. *See supra*; *see also* 20 C.F.R. § 404.1520c.

evidence. On the other hand, although the ALJ adopted Dr. Jones' opinions, he made no accommodation for Ms. Burch's adaptation limitation in the RFC. Like *Parker*, the Court finds that any "connection" between Plaintiff's limitations in adapting to changes in the work setting is not "obvious" in this case by limiting her to unskilled work.

As discussed, an ALJ cannot turn a blind eye to moderate Section I limitations, they must be included in the narrative RFC ("Section III") in order to be considered substantial evidence to support an RFC determination. *See supra*, *Carver.* Here, the ALJ adopted the Section III findings from Dr. Jones, *see* TR. 797, but the RFC did not account for any accommodations for Plaintiff's limitations in adapting to changes in the workplace, and the ALJ failed to explain the omission. As a result, remand is warranted. *See Garcia v. Saul*, No. CIV-20-0097 KBM, 509 F.Supp.3d 1306, 1318 (D.N.M. Dec. 23, 2020) (reversing and remanding because the RFC failed to account for the plaintiff's moderate limitations in his ability to respond appropriately to changes in a work setting and the ALJ failed to explain why he rejected the limitations in formulating the RFC.)

## VII.   PLAINTIFF'S REMAINING ALLEGATION OF ERROR

In her remaining allegation of error, Plaintiff alleges that the ALJ erred in his evaluation of the VE's testimony. (ECF No. 11:7). But the Court declines consideration of this alleged error based on the remand involving a reconsideration of various medical opinions and evidence, which may affect the RFC and subsequent VE testimony. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the

remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on April 11, 2024.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE